RECEIVED

AUG 2 2 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| PAT HUVAL'S FISHERMAN WHARF | CIVIL ACTION NO.: 06-324 |
| VERSUS | JUDGE DOHERTY |
| UNITED STATES INTERNATIONAL TRADE COMMISSION, UNITED STATES BUREAU OF CUSTOMS AND BORDER PROTECTION, and THE CRAWFISH PROCESSORS ALLIANCE | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

### I. Introduction

Currently pending before the Court are three Motions to Dismiss filed by the Crawfish Processors Alliance ("CPA") [Doc. 4], the United States International Trade Commission ("ITC") [Doc. 13] and the United States Bureau of Customs and Border Protection ("Customs") [Doc. 15]. All movants argue this matter should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) on the basis that the United States Court of International Trade (CIT) has exclusive jurisdiction to adjudicate the claims of plaintiff in this matter. Customs asks, in the alternative, that the Court transfer this matter to the Court of International Trade pursuant to 28 U.S.C. §1631. For the reasons stated below, this Court finds: (1) it does not have subject matter jurisdiction over the issues raised in this suit, because it involves matters that are within the exclusive jurisdiction of the Court of International Trade pursuant to 28 U.S.C. §1581; and (2) it is in the interest of justice that this matter be transferred to the Court of International Trade.

## II. Background

Plaintiff, Pat Huval's Fisherman Wharf, is a domestic producer of crawfish tail meat in Henderson, Louisiana. Plaintiff's claims arise out of actions taken by the ITC and Customs pursuant to the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA"), commonly known as "the Byrd Amendment," codified at 19 U.S.C. §1675c.[1] In 1997, the ITC and United States Department of Commerce ("Department of Commerce") determined that the domestic crawfish industry was materially injured due to imports of crawfish tail meat from China being sold at less than fair market value. As a result of this determination, the Department of Commerce imposed an antidumping duty order on imports of crawfish tail meat from China in September 1997. 62 F. Reg. 48218-19 (Sept. 15, 1997). The order remains in place today. Continuation of Antidumping Duty Order, 68 F. Reg. 48340 (Aug. 2003).

During the ITC's original investigation, plaintiff was not a petitioner, *i.e.*, a member of the association that filed the antidumping petition with the Department of Commerce and the ITC, nor a supporter of the petition by letter or questionnaire response. As such, plaintiff is unable to receive distributions of the duties collected pursuant to the antidumping duty order imposed on imports of crawfish tail meat from China.[2] Plaintiff has filed this lawsuit, essentially seeking past and future

---

[1] The CDSOA modified the Tariff Act of 1930 and provided that duties collected under antidumping or countervailing duty orders be held in accounts for distribution to "affected domestic producers" to offset "qualifying expenditures." Bergeron Seafood v. United States Intern. Trade Com'n., 306 F.Supp. 2d 1353, 1355 (C.I.T. 2004) (citing Pub.L. No. 106-387, 114 Stat. 1549, 1549A72 - 1549A73).

[2] There is a lengthy description in all pending motions, as well as plaintiff's complaint, of the process one must follow to be considered a petitioner or supporter of an investigation by ITC into antidumping or countervailing duty activities. (See also Bergeron, *supra*; Pacific Giant, Inc. v. U.S., 223 F.Supp. 2d 1336 (C.I.T. 2002); Huaiyin Foreign Trade Corp. v. U.S. Dep't of Commerce, 201 F.Supp. 2d 1351 (C.I.T. 2002); and Michael Mabile and Jeffrey Telep, Emerging Customs Issues for Petitioners in Antidumping and Countervailing Duty Cases, 38 Int'l Law 89 (2004)). If it is determined that dumping

2

distributions of these duties, as well as damages resulting from his exclusion from the list of affected domestic producers.

More specifically, plaintiff's suit seeks from this Court a declaratory judgment holding: (1) the ITC and Customs have violated its due process rights through their implementation of the CDSOA; (2) the ITC and Customs have violated its equal protection rights through their implementation of the CDSOA; (3) the ITC and Customs have committed a Fifth Amendment taking through their implementation of the CDSOA; and (4) the ITC and Customs' administration of the CDSOA is arbitrary, capricious and an abuse of discretion. Plaintiff also seeks a writ of mandamus ordering: (1) the ITC include plaintiff on its list of affected domestic producers, or alternatively, order ITC to allow plaintiff to proceed with its petition for redress; (2) Customs pay plaintiff a pro rata share, plus interest, of the CDSOA distributions made since 2000 pursuant to the antidumping order upon crawfish tail meat since 2000. Plaintiff requests additionally or alternatively, that the Court order CPA to pay it a pro rata share of the distributions it has "unjustly" received. Plaintiff seeks an injunction ordering CPA to allow it membership into the CPA. Plaintiff seeks an order holding all defendants jointly and severally liable for plaintiff's damages. Finally, plaintiffs seeks damages against all defendants for injury sustained to its business, and an award of damages against ITC and Customs for the violations of its constitutional rights, loss of income and "potential business

---

has occurred or a countervailable subsidy has been provided by an exporting nation, the Department of Commerce will impose an antidumping or countervailing duty order. The CDSOA provides that duties assessed pursuant to a countervailing duty order or an antidumping duty order shall be distributed on an annual basis to the affected domestic producers. Affected domestic producers are defined as manufacturers, producers, farmers, ranchers, or worker representatives that were "a petitioner or interested party in support of the petition with respect to which an antidumping duty order, a finding under the Antidumping Act of 1921, or a countervailing duty order has been entered." 19 U.S.C. §1675c(b)1

3

resulting therefrom," as well as reasonable attorney fees and costs.

## III. Standard of Review

### A. Motion to Dismiss

Motions filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the court to hear a case. Fed. R. Civ. P. 12(b)(1). The district court has the power to dismiss a case pursuant to Rule 12(b)(1) in any one of three instances: (1) the complaint alone; (2) a complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming v. U.S., 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof for a Rule 12(b)(1) motion to dismiss is imposed on the party asserting jurisdiction. Id. "A motion under Rule 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." Home Builders Ass'n of Mississippi, Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).

### B. Motion to Transfer

28 U.S.C.A. §1631 provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

Section 1631 was enacted as Section 301(a) of the Federal Courts Improvement Act of 1982 (FCIA). Dornbusch v. C.I.R., 860 F.2d 611, 612-613 (5th Cir. 1988). The purpose of the FCIA was to

enhance citizen access to justice. Id. Congress intended that a case mistakenly filed in the wrong court should be transferred as though it had been filed in the transferee court on the date in which it was filed in the transferor court. Id.

## IV. Analysis

Plaintiff alleges this Court has jurisdiction to entertain this action pursuant to 28 U.S.C. §§1331 (federal question jurisdiction), 1343 (civil rights) and 1367 (supplemental jurisdiction). However, as shown below, Congress has vested exclusive jurisdiction over this matter with the Court of International Trade pursuant to 28 U.S.C. §1581(i). As such, plaintiff has not met his burden of proof and shown that jurisdiction lies with this Court.

The Court of International Trade is an Article III Court that possesses "all of the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. §251; 28 U.S.C. §1585. The CIT has been granted exclusive jurisdiction over a broad range of civil actions originating from import transactions, or federal statutes dealing with international trade. See 28 U.S.C. §1581. The exclusive jurisdiction of the Court of International Trade is an exception to the broad grant of jurisdiction to the Federal District Courts over matters involving federal questions. If the Court of International Trade possesses exclusive jurisdiction to entertain an action, such jurisdiction divests federal district courts of concurrent jurisdiction. 28 U.S.C. §1337(c)("The district courts shall not have jurisdiction under this section of any matter within the exclusive jurisdiction of the Court of International Trade..."); Conoco, Inc. v. U.S. Foreign-Trade Zones Board, 18 F.3d 1581, 1586 (Fed. Cir. 1994); K-Mart Corp. v. Cartier, Inc., 485 U.S. 177, 182-83 (1988).

Under 28 U.S.C. §1581(a) through (h), the Court of International Trade is granted exclusive jurisdiction over a variety of actions involving customs and trade laws, including judicial review of

antidumping and countervailing duty determinations by Commerce and the ITC. 28 U.S.C. § 1581; see also Wright and Miller: Federal Practice and Procedure, Vol. 17, Section 4103 (current through 2006); Mabile and Telep, *supra* at 95. In addition to the specific delineations of jurisdiction provided in (a) - (h), section 1581(i) further provides the Court of International Trade with a broad residual grant of exclusive jurisdiction over:

> ... any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for - -
>
> (1) revenue from imports or tonnage;
> (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
> (3) embargos or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
> (4) administration and enforcement with respect to the matters referred to in paragraphs (1) - (3) of this subsection and subsections (a) - (h) of this section.

As more fully explained below, the Court of International Trade's exclusive jurisdiction over interpretation and application of the CDSOA is found within this broad grant of residual jurisdiction over trade issues that are not covered by the more specific jurisdictional provisions found at (a) through (h). See e.g. Mabile and Telep, *supra* at 95; Bergeron, *supra*.

In the instant matter, plaintiff challenges Customs' and ITC's implementation of the CDSOA. The CDSOA is clearly a law providing for the "administration and enforcement" of matters related to antidumping/countervailing duty determinations in that it provides that duties collected under antidumping duty orders be held in accounts for distribution to affected producers. Thus, plaintiff's suit (against agencies or offices of the United States) arises directly out of a federal law providing for the imposition of duties on the importation of merchandise for reasons other than the raising of

revenue (§1581(i)(2))[3], and directly out of a federal law providing for the administration of these duties (§1581(i)(4)). Plaintiff's claim clearly raises issues regarding whether Customs and ITC properly carried out the laws providing for administration and enforcement of duties collected on imports under antidumping duty orders, and, as such, falls under the exclusive jurisdiction of § 1581(i).[4]

The Court finds plaintiff's arguments against exclusive jurisdiction lying with the Court of International Trade to be unpersuasive. Plaintiff primarily relies on the United States Supreme Court's decision in K-Mart Corp. v. Cartier, Inc., 485 U.S. 176 (1988). In K-Mart, the Supreme Court held that the Court of International Trade did not have jurisdiction under 28 U.S.C. §1581(i)(3) over an action for declaratory and injunctive relief which challenged the Customs Service regulation allowing the importation of certain "gray-market" goods and asserted the

---

[3]The stated purpose of the CDSOA is to strengthen the remedial purpose of the antidumping and countervailing duty laws; no where in the legislative history does Congress state the purpose of the CDSOA is to raise revenue. See Pub.L. No. 106-387, *supra*.

[4]The Court of International Trade has held that, pursuant to 28 U.S.C. §1581(i), it possesses jurisdiction to entertain challenges to the CDSOA and the ITC's implementation of the statutory and regulatory scheme. Bergeron's Seafood v. United States Intern. Trade Com'n., 306 F.Supp. 2d 1353 (CIT 2004) (Court of International Trade has jurisdiction pursuant to 28 U.S.C. §1581(i) over suit brought by domestic producer of crawfish meat challenging the ITC's decision not to include it on the list of affected domestic producers eligible to receive distributions of antidumping duties collected on crawfish tail meat imported from People's Republic of China.) While the Bergeron court did not specifically state that its jurisdiction was exclusive, exclusive jurisdiction is implicit as the court found jurisdiction pursuant to §1581(i), which provides only for exclusive jurisdiction. Furthermore, while jurisdiction does not appear to have been challenged in Bergeron (as plaintiff points out), the court *itself* "has an obligation to examine its own jurisdiction at all stages of a proceeding and may raise the issue for consideration sua sponte." C.E.G. Matthews v. U.S., 2006 WL 2130510 (Fed. Cl. 2006) *(citing* Wood-Ivey Sys. Corp. v. U.S., 4 F.3d 961, 967 (Fed. Cir. 1993); Hurt v. U.S., 64 Fed Cl. 88, 89 (2005)). *See also*, Candle Corp., *supra* (CIT has jurisdiction pursuant to § 1581(i) over suit challenging Custom's denial of plaintiff's application to be added to list of affected domestic producers receiving CDSOA distributions).

7

regulation was inconsistent with the Tariff Act of 1930 and the Lanham Trade-Mark Act. In K-Mart the Court was addressing jurisdiction under §1581(i)(3), which grants jurisdiction over certain suits involving "embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety." The Court found that the importation prohibition of gray market goods contained in §526A of the Tariff Act of 1930 was not an "embargo" as contemplated under §1581(i)(3), since, rather than reflecting a governmental restriction on the quantity of a particular product (the definition of embargo), it merely provides a mechanism by which a trademark owner might, at its own option, enlist the Custom's aide in barring foreign-made goods bearing its trademark in order to enforce its own private trademark right. K-Mart is inapplicable to the facts and the pertinent portion of §1581 at issue in this matter.

The Court finds equally unpersuasive plaintiff's argument that the Court has supplemental jurisdiction over the claims brought pursuant to Louisiana law against CPA. 28 U.S.C. §1337 provides that supplemental jurisdiction exists **only** where a district court has original jurisdiction. As this Court does not have original jurisdiction over any of the claims made in this matter, there is no basis for supplemental jurisdiction under 28 U.S.C. §1367 with respect to claims asserted against the CPA.

Due to the foregoing, the Court finds it does not have jurisdiction over this matter. However, as cases filed in a court without jurisdiction are to be transferred to the court where they should have been brought if a transfer is in the interest of justice, this Court shall transfer this matter to the Court of International Trade, as it is this Court's finding that a transfer is in the interest of justice and furthers the purpose of the Federal Courts Improvement Act of 1982.

## V. Conclusion

The Court finds that it is without jurisdiction to entertain this matter, but that it is in the interest of justice to transfer this matter to the United States Court of International Trade. Therefore, the Motions to Dismiss the Complaint filed by Crawfish Processors Alliance [Doc. 4], the United States International Trade Commission [Doc. 13] and the United States Bureau of Customs and Border Protection [Doc. 15] are DENIED as MOOT, and plaintiff's suit is ordered TRANSFERRED to the United States Court of International Trade.

THUS DONE AND SIGNED this 22 day of August, 2006.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE